**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ENERGY POLICY ADVOCATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SECURITIES AND EXCHANGE | ) |
| COMMISSION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No. 22-1497 (TNM)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD............................................................................................................1

**I.**      **Defendant Does Not Satisfy its Burden to Adequately Search for Records, Admits it Did Not Search Non-official Email Accounts on the Basis of a Claim Now Shown to Be Untrue.** ...................................................................................3

**II.**     **Summary Judgement is Inappropriate Because Defendant's Vaughn Index Provides Only Boilerplate, Repetitive, and Insufficiently Detailed Assertions of Why the Records are Privileged and Covered by Exemption 5.** ...................................7

**III.**    **Defendant Does Not Show the Harm Needed to Withhold or Redact the Responsive Records.** ...................................................................................12

CONCLUSION.....................................................................................................................15

i

INTRODUCTION

SEC has violated the Freedom of Information Act ("FOIA") by withholding, in full, five
(5) text message or "Jabber" correspondence records[1] under FOIA's Exemption 5. The violation
is laid bare at first by SEC's *Vaughn* Index lacking sufficient detail to support either the
withholdings or the idea that there is no reasonably segregable information in these records.
SEC's justifications for why the records are allegedly covered by FOIA's Exemption 5 are
boilerplate and repetitive, with each entry changing just the rule involved to the particular
withheld record and failing to include substantive reasoning to justify the claimed exemption.
Thus, SEC fails to establish the withheld information is covered by the deliberative process
privilege articulated by FOIA's Exemption 5.

Further, and separately a freestanding reason why SEC's withholdings are invalid, it has
not shown that disclosure of any of the 5 records, in whole or in part, would cause harm, as the
2016 FOIA Amendments require for withholding even exempt information.

As such, SEC has not shown that it produced all reasonably segregable records
responsive to Plaintiff's FOIA requests.

LEGAL STANDARD

Under FOIA, an agency is obligated to demonstrate that "each document that falls within
the class requested" has either "been produced" or is "exempt." *Goland v. CIA*, 607 F.2d 339,
352 (D.C. Cir. 1978). The agency bears the "burden of showing that its search was adequate,"
rather than the FOIA requestor having to prove that it was inadequate. *Carney v. U.S. Dep't of
Justice*, 19 F.3d 807, 812 (2d Cir.1994). The burden never shifts to Plaintiff at any stage [cite].

---

[1] "For the time period covered by Plaintiff's FOIA request, Jabber was the instant messaging
system used at the SEC." Declaration of Carrie Hyde-Michaels, ECF No. 17-2, ¶ 7.

In a lawsuit under the Freedom of Information Act, the "burden is on the agency to demonstrate, not the requester to disprove, that the materials sought … have not been 'improperly' 'withheld.'" *Department of Justice v. Tax Analysts*, 492 U.S. 136, 142 n. 3 (1989).

"The burden is on the agency to prove de novo in trial court that the information sought fits under one of the exemptions to the FOIA." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). Because of FOIA's presumption in favor of disclosure, exemptions are "narrowly construed." *FBI v. Abramson*, 456 U.S. 615, 630 (1982); *accord Dep't of Air Force v. Rose,* 425 U.S. 352, 360–61 (1976); *Loving v. Dep't of Defense*, 550 F.3d 32, 37 (D.C. Cir. 2008).

Moreover, "Under the FOIA Improvement Act of 2016, the government may not withhold even those privileged materials unless it also 'reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption." *Reporters Committee v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021), *citing* 5 U.S.C. § 552(a)(8)(A)(i)(I). This "reasonable foreseeability of harm" standard requires the withholding agency to provide "context or insight into the specific decision making processes or deliberations at issue, and how they in particular would be harmed by disclosure" of the contested records. *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. 17-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019). That is, the agency must demonstrate the foreseeability of harm, as well as the existence of an otherwise exempt exchange.

An agency's summary-judgment declarations to support these withholdings must contain "reasonable specificity of detail rather than merely conclusory statements," that "are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch. v. U.S. Secret Serv*., 726 F.3d 208, 215 (D.C. Cir. 2013). A declaration must therefore "provide detailed and specific information demonstrating that material withheld is

logically within the domain of the exemption claimed." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998), as amended (Mar. 3, 1999).

Even when an agency carries its burden to demonstrate that *some* material may be exempt, the agency nevertheless has a duty to "segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii). This duty is so essential that even if the FOIA requester does not challenge the agency's failure to release nonexempt information, "the District Court ha[s] an affirmative duty to consider the segregability issue *sua sponte*." *Transpacific Policing v. U.S. Customs*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

## I.   Defendant Does Not Satisfy its Burden to Adequately Search for Records, Admits it Did Not Search Non-official Email Accounts on the Basis of a Claim Now Shown to Be Untrue.

SEC's motion and recent correspondence with respect to other requests calls into question the adequacy of SEC's search for records. These questions cannot be answered by SEC's declarants and are apparent on the face of the record.

In order to meet the standard required for an adequate FOIA search, the agency must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *ACLU v. Dep't of Homeland Sec.*, Civil Action No. 20-3204 (RDM), 2023 U.S. Dist. LEXIS 57430, at *16 (D.D.C. Mar. 31, 2023) citing *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68, 287 U.S. App. D.C. 126 (D.C. Cir. 1990).

An adequate search may be supported by "[a] *reasonably detailed* affidavit [or declaration], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id* (emphasis added). "Although a requester must reasonably describe the records sought, an agency also has a

duty to construe a FOIA request liberally." *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890, 315 U.S. App. D.C. 177 (D.C. Cir. 1995).

      Although SEC's declarations support the notion that some type of a search for responsive documents was conducted, the search does not meet the applicable legal standard. This is so for two basic reasons:  First, because the SEC's descriptions of how the repositories of records were searched and by whom are insufficient to permit Plaintiff (or indeed the Court) to determine the sufficiency of the search. Second, to the extent the Court construes SEC's statements to say more than they do on their face, SEC's claim that non-official accounts are inaccessible is not tenable in the face of record evidence.

      With respect to the adequacy of SEC's declaration, Plaintiff notes that declarations that "do not denote which files were searched or by whom" or "do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized," have been held to be "inadequate and too conclusory to justify a grant of summary judgment." *Santos v. Drug Enforcement Agency*, 357 F.Supp.2d 33, 37 (D.D.C. 2004) (quoting *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C.Cir.1980) (affidavit that fails to "denote which files were searched or by whom" is insufficient); see also *Steinberg v. Department of Justice*, 23 F.3d 548, 552-553 (D.C. Cir. 1994) (finding description of search, such as reference to what "EOUSA" office did, inadequate because it failed "to describe in any detail what records were searched" and "by whom"); *Murray v. BOP*, 741 F.Supp.2d 156, 163 (D.D.C. 2010) ("affidavits or declarations submitted by the agency…must describe what records were searched, by whom") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 92 (D.D.C. 2009)))

      This same deficiency is present in SEC's declarations. The Hyde-Michaels declaration provides that the ". . . SEC's Office of Information Technology ("OIT") ran a search . . ."  ECF

4

No. 17-2, ¶¶ 7,9. As in *Steinburg*, *supra*, merely stating the office that completed the search is insufficient.  Additionally, the declarations do not indicate that Plaintiff's requested searches were completed "construed liberally." *Id*., See *Nation Mag., Wash. Bureau v. U.S. Customs Serv*. 71 F.3d at 890.  Specifically, the request asks that the search terms "GHG," "climate risk," and "CRD" be utilized to find responsive documents. Construing these terms liberally would require not searching for the exact term only, but also plurals and the written-out form of each acronym. Indeed, the Plaintiff's request specifically asked that the term GHG be searched in "any form." ECF No. 17-2, ¶ 3. The Hyde-Michaels declaration, however, only indicates that the exact letters were searched with no reasonably foreseeable variations. *Id.* at ¶ 7.

Recent document productions by Defendant in response to a separate FOIA request by plaintiff, 23-00144-FOIA — prompted by SEC's assertions in its October 2022 Summary Descriptions of Searches of Search provided to plaintiff in this matter — flatly contradict the claimed basis for limiting SEC's search in this matter. Specifically, Hyde-Michaels asserts:

> "13. The SEC did not search for responsive emails in SEC staff's personal email accounts, as OIT is not able to conduct electronic searches of non-SEC email correspondence. Consequently, SEC staff asked Gary Gensler, Allison Herren Lee, Frank Buda, Prashant Yerramalli, and Angelica Annino whether they use their personal email addresses to conduct SEC business. They stated that they do not use their personal email addresses to conduct SEC business.
> 14. Text messages sent or received by staff on their SEC-issued cell phones are not stored or maintained on a central SEC messaging system. Therefore, OIT is not able to conduct electronic searches of text messages sent to or from SEC-issued cell phones."

ECF No. 17-2, ¶¶ 13-14.

The deficiencies in the search which are acknowledged above, together with the SEC's claimed inability to search non-SEC email correspondence or text messages sent from SEC-issued cell phones, works strongly against Defendant´s Motion seeking summary judgment. But

it does not stand alone in casting doubt on SEC's assertions: SEC's claim of use by officials of non-official accounts is no longer tenable because of revelations from SEC itself in other cases.

On May 16, 2023, in response to 23-00144-FOIA seeking "all emails forwarded to SEC at any point from November 8, 2020 through October 12, 2022, inclusive, by SEC Chairman Gary Gensler from a non-.gov email account", SEC released 191 pages of emails from Chair Gary Gensler's non-official email accounts and withheld "thirty (30) pages of records in their entirety under 5 U.S.C. § 552(b) 5 or (6) [and] six (6) pages of records in their entirety under 5 U.S.C. § 552(b)(4), since they contain confidential commercial or financial information that is protected from release under Exemption 4." See Plaintiff's Exhibit 1. SEC offers no explanation for why these forms of communication — non-.gov-account emails discussing SEC business and text messages on SEC-issued cell phones — are not subject to the agency's obligation to preserve and produce responsive documents, but it did acknowledge that no search was conducted of these accounts for records responsive to this request and on a basis that Plaintiff knows, and here affirms, is untrue.

The Court should require SEC to submit admissible evidence that explains why SEC conducted its search in the way that it did, who conducted the searches, and why, other than perfunctory reasons, certain means of communication appear to have been excluded and why — other than repeating officials' claims, now disproved in at least one significant instance— it should be permitted to assert that officials do not use (or, implicitly, receive) official communications on these devices/accounts.

**II.     Summary Judgement is Inappropriate Because Defendant's *Vaughn* Index Provides Only Boilerplate, Repetitive, and Insufficiently Detailed Assertions of Why the Records are Privileged and Covered by Exemption 5.**

Defendant has not met a basic, threshold requirement for a *Vaughn* Index, ECF No. 17-4, which requires presenting how and why the withheld information is exempt under a claimed privilege.

The records at issue here are text messages (ECF No. 17-4, Docs. 1, 3-5[2]), or similar "Jabber" instant messages (*Id.*, No. 5). SEC has the burden of demonstrating its withholding is appropriate for each and every record and portion of a record, and it has failed to do so for the information in even one record. By shielding every word of each of these responsive records, SEC surely shields more than truly "deliberative" information relating to agency decisions and shared between covered individuals from view. Shielding the entirety of every document *in toto*, SEC surely and necessarily has hidden factual and nondeliberative material from view.

Further, the *Vaughn* Index entries for Doc. Nos. 1 - 5 do not in fact describe why the withholdings are exempt, failing to satisfy a key requirement for a *Vaughn* Index. The standard requires "a detailed description…of the entire content of each withheld agency record or deletion from a released agency record" as well as "detailed justification statements giving particularized and specific justifications for each claim of exemption …[which] shall: …(d) contain specific factual or evidentiary material to support each element of a claimed exemption [and]… the specific injury to [the agency] which release would allegedly create; and (h) why the public interest does not favor disclosure." See, e.g., *Coastal Corp. v. Dept. of Energy*, 496 F.Supp. 57, 59 (D. Del. 1980). The index submitted by Defendant is anything but "detailed"

---

[2] The *Vaughn* Index does not number the five records but identifies them by date. As there are only five records in a page-and-a-half Vaughn, Plaintiff here refers to them by their appearance in the Index, 1 – 5.

and makes only conclusory assertions as its explanation for the exemption of records 1-5. In each entry, SEC merely states that the communications meet the standard rather than describing how they do so.

The SEC's broad and repetitive reasons for withholding, in full, without giving enough detail about the content to understand meaningfully why the documents were withheld, are facially inadequate. Without knowing which kind of information is in a redaction, the Court is hampered in assessing the validity of the claim, and the plaintiff is prevented from highlighting the weakness of even the weakest such claims. See *Campaign for Responsible Transplantation v. FDA*, 219 F. Supp. 2d 106, 116 (D.D.C. 2002) ("Without a proper *Vaughn* index, a requester cannot argue effectively for disclosure and this court cannot rule effectively.").

Moreover, neither declaration establishes the withheld content is deliberative. The Tallarico Declaration states only, at ¶ 15, "The records reflect SEC staff's consultative discussions on aspects of proposed rulemaking prior to the agency's release of the proposed rules." The *Vaughn* Index ought to describe in more detail the pre-decisional deliberations to which this language relates, but barely makes an effort to do so in any way other than plugging in the name or reference to a rule to which the boilerplate refers. The declarant does not explain how the documents meet the standard, nor does he offer any factual basis for the assertions in the Vaughn log. Again: SEC's mere assertions of the applicability of an exemption do not suffice. The following table excerpts the basis for each b5 exemption claimed in Defendant's *Vaughn* index:

| Description of Withheld Information/Documents | Claimed Basis for Withholding Under Exemption 5 |
| --- | --- |
| In a text message sent by Allison Herren Lee, discussion concerning | The withheld information is contained within an intra-agency text message, and it reflects discussion between SEC staff concerning SEC proposed climate-related rulemaking about "ESG," specifically |

| | |
|---|---|
| SEC proposed rulemaking was withheld. | the SEC's May 2022 proposed rule concerning the enhancement of disclosures by investment advisers and investment companies about ESG investment practices. The text message is deliberative because it reflects the agency's consultative discussions on aspects of the proposed rulemaking. The text message is pre-decisional because it concerns intra-agency discussion about a proposed rule prior to its release. |
| In a Jabber message sent by Megan Barbero, analysis concerning SEC proposed rulemaking was withheld. | The withheld information is contained within an intra-agency Jabber message, and it reflects discussion among SEC staff concerning SEC proposed climate-related rulemaking, specifically an assessment about whether to include particular provisions in the SEC's March 2022 proposed rule about climate-related disclosures. The Jabber message is deliberative because it reflects the agency's consultative analysis on aspects of the proposed rulemaking. The Jabber message is pre-decisional because it concerns intra-agency discussion about a proposed rule prior to its release. |
| In a text message sent by Gary Gensler, discussion concerning drafting language in a proposed rule was withheld. | The withheld information is contained within an intra-agency text message, and it reflects discussion between SEC staff concerning SEC proposed climate-related rulemaking, specifically about the edits to language in the SEC's March 2022 proposed rule about climate-related disclosures. The text message is deliberative because it reflects the agency's consultative discussions on drafting language in a proposed rule. The text message is pre-decisional because it concerns intra-agency discussion about a proposed rule prior to its release. |
| In a text message sent by Parisa Haghshenas, discussion concerning SEC proposed rulemaking was withheld. | The withheld information is contained within an intra-agency text message, and it reflects discussion between SEC staff concerning SEC proposed climate-related rulemaking about "ESG," specifically the SEC's May 2022 proposed rule concerning the enhancement of disclosures by investment advisers and investment companies about ESG investment practices. The text message is deliberative because it reflects the agency's consultative discussions on aspects of the proposed rulemaking. The text message is pre-decisional because it concerns intra-agency discussion about a proposed rule prior to its release. |
| Discussion in two text messages concerning SEC proposed rulemaking was withheld. | The withheld information is contained within two intra-agency text messages, and it reflects discussion between SEC staff concerning SEC proposed climate-related rulemaking, specifically potential edits to the SEC's May 2022 proposed rule concerning the enhancement of disclosures by investment advisers and investment companies about ESG investment practices. The text messages are deliberative because they reflect the agency's consultative discussions on aspects of the proposed rulemaking. The text messages are pre-decisional because they concern intra-agency discussion about a proposed rule prior to its release. |

Each of these purported bases are nearly identical and do not explain how the content of the document is in-fact deliberative and pre-decisional. "An agency invoking the deliberative-process privilege…must 'establish what deliberative process is involved, and the role played by the documents in issue in the course of that process.'…The agency… 'bears the burden of establishing the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process.'" *CREW v. DOJ*, 45 F.4th 963, 972 (D.C. Cir. 2022) (citations omitted). SEC's short *Vaughn* descriptions do not come close to meeting this burden. Indeed, SEC seems to substitute an *assertion of deliberation* for requisite facts that would establish deliberation. The character of the decisions in question is not mentioned in any of the *Vaughn* entries. Neither do any of them describe the deliberative process or the role of the documents in question, other than to use generalities such as "consultative discussions on aspects of the proposed rulemaking." ECF 17-4. These generalities could apply to nearly any document prior in time to proposed legislation. The extent to which the documents are actually reflective of a deliberative process is impossible for the court to assess without additional, non-generic, detail.

The bare assertion in the Tallarico Declaration at ¶ 15 that release of the messages at issue (see, *infra*) would somehow chill discussions does not contain sufficient detail to show they are privileged. Not all agency decisions are covered by the deliberative process privilege. *See, e.g., Elkem Metals Co. v. U.S.*, 126 F.Supp.2d 567, 576-77 (C.I.T. 2000) (privilege did not protect "a draft of the ITC's issuance of a schedule for the conduct of its changed circumstances reviews," or agency's "draft of a proposed work schedule" or "another proposed work schedule"; items were "not protected by the deliberative process privilege," especially since "disclosure" of "scheduling information" would not "discourage candid discussions within the agency" and such information did not "reflect the give-and-take" of the agency's "decision-making process");

*Hennessey v. U.S. Agency For Intern. Development,* 121 F.3d 698, 1997 WL 537998, *5 (4th Cir. Sept. 2, 1997) (even "construction scheduling dispute" that gave rise to legal claim against agency was not shielded by deliberative-process privilege because it did "not bear on a policy-oriented judgment of the kind contemplated by Exemption 5"; even if a "decision" regarding such a matter "can be regarded as a 'policy,'" it is not the "'stuff' of the deliberative process privilege" if it is at the "very outer limits" of what is a policy).  Without a sufficiently detailed *Vaughn* index, it is impossible for Plaintiff to know if the cited exemptions apply, or are as they appear on their face to be merely recitations of the standard.

Defendant's *Vaughn* Index entries are far less detailed than the descriptions courts have found too lacking in detail to support a deliberative-process privilege claim, for example saying that withheld information relates to "high tech policy issues," *ICM Registry, LLC v. U.S. Dept. of Commerce*, No. 06-cv-0949 (JR), 2007 WL 1020748, *6 (D.D.C. March 29, 2007), "wilderness issues," *Wilderness Society v. Dep. of Interior*, 344 F.Supp.2d 1, 12 (D.D.C. 2004), "environmental testing and safety measures," *Judicial Watch,* 297 F.Supp.2d at 264, or "HLCG information sharing principles." *Electronic Frontier Foundation v. U.S. Dept. of Justice*, 826 F.Supp.2d 157, 168-70 (D.D.C. 2011).  Similarly, SEC's *Vaughn* index simply claims the covered documents are related to "ESG" or "climate-related rulemaking."

Just because withheld documents are related to the search terms and rulemaking is insufficient to establish that they are deliberative in nature. "We reemphasize the narrow scope of Exemption 5 and the strong policy of the FOIA that the public is entitled to know what its government is doing and why. The exemption is to be applied "as narrowly as consistent with efficient Government operation." *Coastal States Gas Corp. v. Dep't of Energy*, 199 U.S. App. D.C. 272, 617 F.2d 854, 868 (1980). (internal citations omitted).

**III.     Defendant Does Not Show the Harm Needed to Withhold or Redact the Responsive Records.**

Assuming, *arguendo*, that SEC had met the burden to establish that exemption 5 applied at all, SEC nevertheless does not "concretely explain how" and "why actual harm would foreseeably result from release," which is an independent requirement under the 2016 FOIA Amendments before material otherwise privileged under Exemptions 5 and 6 can be withheld. *Reporters Committee v. FBI*, 3 F.4th 350, 369-71 (D.C. Cir. 2021), citing 5 U.S.C. § 552(a)(8)(A)(i)(I). SEC instead makes general statements, none of which adequately describe the harm that would result from release.

"Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld. Agencies cannot rely on "mere 'speculative or abstract fears,' or fear of embarrassment" to withhold information. Nor may the government meet its burden with "generalized assertions[.]" *Reporters Comm. for Freedom of the Press v. FBI*, 453 U.S. App. D.C. 50, 69, 3 F.4th 350, 369 (2021)(internal citations omitted).

The *Vaughn* Index does not allege that release of the identified record(s) would reasonably foreseeably cause harm or have any chilling effect on agency deliberations or how or why. *See* ECF No. 17-4.

Similarly, the declarations do not adequately establish the potential for harm. The Tallarico Declaration, ECF No. 17-3, merely states at ¶ 14, that "SEC staff have reviewed the records responsive to FOIA Request No. 22-01719- FOIA to determine if it is reasonably foreseeable that disclosure would harm an interest protected by one of the FOIA's statutory exemptions or the disclosure is prohibited by law. The SEC has determined that it is reasonably

foreseeable that disclosure of these records would cause harm." The Hyde-Michaels Declaration, ECF No. 17-2, is silent on this point.

About the claimed "chilling effect," the Tallarico Declaration, ECF No. 17-3, offers no meaningful detail, but instead conclusorily states at ¶ 15 that release would chill discussions then restates what a "chilling" is:

> "Disclosure of the information relating to internal SEC deliberations that the SEC is withholding under the deliberative process privilege would chill discussions regarding SEC proposed rulemaking. If these documents were disclosed in response to FOIA requests, staff across the SEC would likely limit their discussions and inhibit their candor in discussing proposed rulemaking. Such chilling would make rulemaking less efficient and effective as it would likely prevent robust discussions among SEC staff in drafting proposed rules."

ECF No. 17-3, ¶ 15. This is insufficient. With no reasonably articulated ill effect, it is hard to fathom how release of the withheld information in five messages sent via platforms which lend themselves to brief, i.e., less likely to be substantive or analytical correspondence, would or could cause harm here. Defendant never addresses this beyond general, boilerplate conclusory statements: "would interfere with the SEC's longstanding approach to rulemaking," (Tallarico Decl. ¶ 16), "would also cause public confusion" (*Id.*), "would jeopardize the candid and comprehensive discussions that are essential for efficient and effective agency rulemaking" (Tallarico Decl. ¶ 17).

How would the release of such information cause this public confusion or interfere with rulemaking? The declarant does not explain how, and simply asserts that it will as if such a truth were somehow self-evident. Plaintiff cannot speculate as to SEC's fears or its basis, and this Court should similarly refrain and hold SEC to its burden of proof. The D.C. Circuit in *Reporters Committee* found "wholly generalized and conclusory" an agency exemption claim that described at greater length than defendant's *Vaughn* Index or Tallarico Declaration how

disclosure of whether a now-proposed rule was going to include or address a particular matter

"would chill full and frank discussions between agency personnel and decision makers regarding

a decision." *Reporters Committee v. FBI*, 3 F.4th at 370. It found insufficiently detailed the

statement that:

> Disclosure … would have an inhibiting effect upon agency decisionmaking and the
> development of policy because it would chill full and frank discussions between agency
> personnel and decision makers regarding a decision. If agency personnel know that their
> preliminary impressions, opinions, evaluations, or comments would be released to the
> general public, they would be less candid and more circumspect in expressing their
> thoughts, which would impede the fulsome discussion of issues necessary to reach a well-
> reasoned decision.

Defendant's explanation for why release of the redacted material would allegedly chill the

staff's ability to do their work is also far shorter, less detailed, and less unequivocal than the

explanation found both "vague" and "insufficiently specific" in *Project on Government*

*Oversight v. DHS*, Case No. l:18-CV-2051-RCL (Feb. 20, 2023), Memorandum Opinion, at pp.

16-17, https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2018cv2051-62, even though the

defendant in that case explained in more detail than the case at bar that disclosure would

"severely undermine" its "ability" to "investigate" violations of civil rights and civil liberties.

In that case, the agency stated, in far more detail (at pg. 17) that:

> Court-ordered disclosure of the information would severely undermine the Department's
> ability to efficiently and effectively investigate allegations of civil rights or civil liberties
> violations, and for its investigators and decision-makers at various points of the
> decisional process outlined above to offer uninhibited opinions and recommendations on
> the matters at issue. Without the continued assurance of confidentiality, CRCL's expert
> consultants would not provide the Department with the meaningful information it needs
> to properly investigate civil rights complaints. Maintaining the confidentiality of these
> types of predecisional and deliberative communications is critical for the Department to
> carry out its mission…
>
> Disclosure of this information would chill the free and frank exchange of ideas and
> recommendations at DHS, including between CRCL's expert and CRCL, and between
> CRCL and the affected DHS component agencies that have been the subject of
> complaints that require investigation. Release of the information would severely

14

undermine the Agency's ability to efficiently and effectively investigate allegations of civil rights or civil liberties violations, and for its investigators and decision-makers at various points of the decisional process ... to offer uninhibited opinions and recommendations on the matters at issue.

Defendant's assertion of public confusion is also far less detailed and specific than that found "insufficiently specific" in *Project on Government Oversight v. DHS*, Case No. l:18-CV-2051-RCL (Feb. 20, 2023), Memorandum Opinion, at pg. 18, https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2018cv2051-62, where the agency said:

> Moreover, release could cause unnecessary public confusion .... [T]he Reports contain the experts' preliminary findings and recommendations. The Reports contain the experts' unverified observations of first impression. For any number of reasons, the Department may not necessarily agree with, or adopt the experts' findings or recommendations. In the Department's view, release of the experts' preliminary findings and recommendations poses a substantial risk of confusing the public as to any eventual final actions of the Department concerning the complaints in question, or the reasons for them.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment should be denied.

Respectfully submitted this the 30th day of June, 2023,

/s/ Matthew D. Hardin
Matthew D. Hardin, D.C. Bar # 1032711
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
(202) 802-1948
MatthewDHardin@gmail.com

*Counsel for Plaintiff*

15

**Plaintiff's**
**Counter Statement of Disputed Facts**

| ¶ | Movant's Statement | Plaintiff's Response to Movant's Statement |
|---|---|---|
| 1. | On April 20, 2022, Plaintiff submitted a FOIA request to the SEC seeking "all text messages and other written electronic, non-email communications including, e.g., SMS, iMessage, direct message via any medium (Facebook, Twitter, Teams, Skype) or other instant message, and any message sent or received via Signal, WhatsApp, or Telegram, whether person-to-person or as a 'chat' or other group messages, which message(s) meet(s) the following parameters": (1) "messages as defined herein that were a) sent to or from (including person-to-person or as part of any group text, Telegram, Signal, WhatsUpp [sic], Facebook, Twitter, etc. chat or DM) any of the following SEC officials i) Gary Gensler, ii) Allison Herren Lee, iii) Frank Buda, iv) Prashant Yerramalli, and/or v) Angelica Annino, and also were sent to or from i) Janet Yellin [sic], and/or any of the following White House officials ii) David Hayes, iii) Ali Zaidi, iiv) [sic] Gina McCarthy and/or v) Philip Giudice (again, whether person to person or as part of any group text, Telegram, Signal, WhatsUpp [sic], Facebook, Twitter, etc. chat or DM), which c) were sent/received at any time from September 1, 2021 through April 20, 2022, inclusive" and (2) "messages as defined herein that were a) sent to or from i) Gary Gensler, ii) Allison Herren Lee, iii) Frank Buda, iv) Prashant Yerramalli, and/or v) Angelica Annino, and also b) includes anywhere, i) GHG (in any form, e.g., including also in GHGs), ii) 'climate risk' (quotations only indicating the search parameter), and/or iii) CRD, which were sent/received at any time from September 1, 2021 through April 20, 2022, inclusive." See Compl. ¶8; Answer ¶8; Hyde-Michaels Decl. ¶3. The SEC assigned Plaintiff's April 20, 2022 FOIA request tracking number 22-01719-FOIA. See Compl. ¶10; Hyde-Michaels Decl. ¶4. | Admitted. |
| 2. | On April 25, 2022, Plaintiff submitted another FOIA request to the SEC seeking "all electronic mail a) sent to, from or which copies (whether as cc: or bcc:) i) Gary Gensler, ii) Allison Herren Lee, iii) Frank Buda, iv) Prashant Yerramalli, and/or v) Angelica Annino, b) | Admitted. |

16

| | | |
|---|---|---|
| | which is also sent to, from of [sic] which copies (again, whether as cc: or bcc:) or includes, anywhere in an email 'thread', whether as a co-correspondent's address or otherwise in the body of, e.g., a forwarded email, i) @nrdc.org, ii) @sustainableFERC.org, and/or iii) @EF.org, which are dated at any time from September 1, 2021 through April 22, 2022, inclusive." See Compl. ¶13; Answer ¶13; Hyde-Michaels Decl. ¶5. The SEC assigned Plaintiff's April 25, 2022 FOIA request tracking number 22-01750-FOIA. See Compl. ¶15; Hyde-Michaels Decl. ¶6. | |
| 3. | On May 27, 2022, Plaintiff filed the complaint in this lawsuit. See ECF No. 1. Plaintiff's FOIA Request Nos. 22-01719-FOIA and 22-01750-FOIA are at issue in this suit. See *Id*. | Admitted. |
| 4. | On July 13, 2022, the SEC responded to Plaintiff's FOIA Request No. 22-01750-FOIA and released to Plaintiff 79 pages of records. Hyde-Michaels Decl. ¶11. The records were redacted in part under FOIA Exemption 6, 5 U.S.C. § 552(b)(6). *Id*. | Admitted that SEC responded, and that the agency withheld the cited portions of the cited record(s) and did so based on the referenced agency assertions. To the extent that this statement could be construed to indicate that the agency's assertions themselves are true, Plaintiff objects pursuant to rule 56 (c)(2) and (c)(4) insofar as this statement is a legal conclusion solely within the province of the Court and not a statement of material fact. |
| 5. | On July 21, 2022, the SEC filed an answer to Plaintiff's complaint. See ECF No. 7. | Admitted. |
| 6. | On September 12, 2022, the SEC responded to Plaintiff's FOIA Request No. 22-01719-FOIA and informed Plaintiff that the SEC identified five pages of records responsive to the FOIA request and was withholding all five pages of records in full under FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5), (6). Hyde-Michaels Decl. ¶8. | Admitted that the referenced correspondence contained the cited language and that the agency withheld the cited portions of the cited record(s) and did so based on the referenced agency assertions. To the extent that this statement could be construed |

| | | |
|---|---|---|
| | | to indicate that the agency's assertions themselves are true, Plaintiff objects pursuant to rule 56 (c)(2) and (c)(4) insofar as this statement is a legal conclusion solely within the province of the Court and not a statement of material fact. |
| 7. | On summary judgment, Plaintiff challenges (1) the adequacy of the searches conducted in connection with FOIA Request Nos. 22-01719-FOIA and 22-01750-FOIA and (2) the SEC's withholding of information from records responsive to FOIA Request No. 22-01719-FOIA. ECF No. 16 at 2. | Admitted. |
| 8. | In the SEC's search for records responsive to FOIA Request No. 22-01750-FOIA, the SEC's Office of Information and Technology ("OIT") conducted an electronic search of the SEC email correspondence of SEC Chair Gary Gensler, SEC Commissioner Allison Herren Lee, Frank Buda, Prashant Yerramalli, and Angelica Annino between September 1, 2021 and April 22, 2022 (the time period requested) using the search terms "nrdc.org," "sustainableFERC.org," and "EF.org." Hyde-Michaels Decl. ¶9. The email search consisted of a search of all emails sent to or received by Chair Gensler, Commissioner Lee, Frank Buda, Prashant Yerramalli, and Angelica Annino (using the SEC email addresses that they generally use) where the search terms were contained in any field of the email (to, from, cc, bcc, subject line, or body of the email). *Id.* | Objected to pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). The cited Declaration either does not support this conclusion, or does not support it in an admissible form (because no identified actors are cited for the proposition that SEC took any particular action, and because it appears to be based on hearsay not within a hearsay exemption and outside the scope of this Court's precedents permitting hearsay when such hearsay is based on the declarant's supervision of a search, insofar as the identity of the searchers is unknown). |
| 9. | OIT's search for records responsive to FOIA Request No. 22-01750-FOIA returned five emails with attachments. Hyde-Michaels Decl. ¶10. The FOIA Office reviewed these emails to identify the records responsive to the FOIA request and determined that four of them, a total of 79 pages of records, were responsive. *Id.* The FOIA Office deemed one email that had a search term only in the attachment, not in the body of the email, as non-responsive and excluded it from release. *Id.* | Objected to pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4) for the reasons set forth above, including but not limited to the inability to ascertain who at OIT conducted a search or what supervisory role any declarant may have had over such an individual. The cited Declaration |

| | | either does not support the SEC's conclusion, or does not support it in an admissible form (because it appears to be based on hearsay not within a hearsay exemption and outside the scope of this Court's precedents permitting hearsay when such hearsay is based on the declarant's supervision of a search). |
|---|---|---|
| 10. | OIT is not able to conduct electronic searches of non-SEC email correspondence. Hyde-Michaels Decl. ¶13. Consequently, SEC staff asked Gary Gensler, Allison Herren Lee, Frank Buda, Prashant Yerramalli, and Angelica Annino whether they use their personal email addresses to conduct SEC business. *Id*. They stated that they do not use their personal email addresses to conduct SEC business. *Id*. | Objected to pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4) because the SEC has not adequately explained the basis of its inability to conduct searchers, or identified any actor at OIT who may have attempted to conduct any search. Therefore, the cited Declaration either does not support the SEC's conclusion, or does not support it in an admissible form (because it appears to be outside the personal knowledge of the Declarant or is based on hearsay not within a hearsay exemption and outside the scope of this Court's precedents permitting hearsay when such hearsay is based on the declarant's supervision of a search). |
| 11. | OIT is not able to conduct electronic searches of text messages sent to or from SEC-issued cell phones. Hyde-Michaels Decl. ¶14. | Objected to for the same reasons set forth in ¶10, *supra*, and pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). The cited Declaration either does not support this conclusion, or does not support it in an admissible |

| | | |
|---|---|---|
| | | form (because it appears to be outside the personal knowledge of the Declarant or is based on hearsay not within a hearsay exemption and outside the scope of this Court's precedents permitting hearsay when such hearsay is based on the declarant's supervision of a search). |
| 12. | In the SEC's search for records responsive to FOIA Request No. 22-01719-FOIA, SEC staff worked with Gary Gensler, Frank Buda, Prashant Yerramalli, and Angelica Annino to search each individual's SEC-issued cell phone for text messages and other messages (sent or received via Facebook, Twitter, chat, etc.) with Janet Yellen, David Hayes, Ali Zaidi, Gina McCarthy, and Philip Giudice. Tallarico Decl. ¶6. | Objected to pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). The "SEC Staff" who worked with the identified individuals are unnamed and therefore the supervisory role of the declarant over such individuals is unclear at best. The cited Declaration therefore either does not support the SEC's conclusion, or does not support it in an admissible form (because it appears to be outside the personal knowledge of the Declarant and appears to be based on hearsay not within a hearsay exemption and outside the scope of this Court's precedents permitting hearsay when such hearsay is based on the declarant's supervision of a search). |
| 13. | Because Allison Herren Lee left the SEC in July 2022, SEC staff searched her SEC-issued cell phone for text messages and other messages (sent or received via Facebook, Twitter, chat, etc.) with Janet Yellen, David Hayes, Ali Zaidi, Gina McCarthy, and Philip Giudice. Tallarico Decl. ¶7. | Objected to for the reasons set forth in ¶12, *supra*, including the SEC's failure to identify the "staff" or the declarant's relationship to such staff. |
| 14. | No responsive text messages or other messages (sent or received via Facebook, Twitter, chat, etc.) with Janet Yellen, David Hayes, Ali Zaidi, Gina McCarthy, and | Admitted. |

|   | | |
|---|---|---|
|   | Philip Giudice were identified in the searches described in paragraphs 12 and 13. Tallarico Decl. ¶8. | |
| 15. | SEC staff also worked with Gary Gensler, Frank Buda, Prashant Yerramalli, and Angelica Annino to search each individual's SEC-issued cell phone for text messages and other messages (sent or received via Facebook, Twitter, chat, etc.) containing the requested search terms "GHG," "climate risk," and "CRD." Tallarico Decl. ¶9. | Objected to for the same reasons set forth in ¶¶ 12 and 13, *supra*. |
| 16. | SEC staff also searched Allison Herren Lee's cell phone for text messages and other messages (sent or received via Facebook, Twitter, chat, etc.) containing the requested search terms "GHG," "climate risk," and "CRD." Tallarico Decl. ¶10. | Objected to for the same reasons set forth in ¶¶ 12 and 13, *supra*. |
| 17. | As a result of the searches described in paragraphs 15 and 16, SEC staff identified four pages of responsive records consisting of text messages that contain the requested search terms "GHG," "climate risk," and "CRD." Tallarico Decl. ¶11. | Admitted. |
| 18. | For the time period covered by Plaintiff's FOIA request, Jabber was the instant messaging system used at the SEC. Hyde-Michaels Decl. ¶7. To capture responsive Jabber messages, OIT ran a search for all Jabber messages sent to or from Gary Gensler, Allison Herren Lee, Frank Buda, Prashant Yerramalli, and Angelica Annino. *Id*. Within each of those sets of messages, SEC staff then ran a search for the requested search terms "GHG," "climate risk," and "CRD." *Id*. SEC staff identified one responsive Jabber message as a result of this search. *Id*. | Objected to pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). The cited Declaration either does not support this conclusion, or does not support it in an admissible form (because the identity of OIT staff is unknown and any supervisory role of the declarant is unclear). |
| 19. | Jabber messages can be sent and received only between SEC staff and not with external individuals. Hyde-Michaels Decl. ¶15. As a result, SEC staff did not search for Jabber communications with the external recipients named in FOIA Request No. 22-01719-FOIA (Janet Yellen, David Hayes, Ali Zaidi, Gina McCarthy, and Philip Giudice). *Id*. | Admitted. |
| 20. | OIT is not able to conduct electronic searches of electronic messages sent to or received from other platforms including Facebook, Twitter, Skype, Signal, WhatsApp, or Telegram. Hyde-Michaels Decl. ¶16. | Objected to for the reasons set forth in ¶10. |
| 21. | Gary Gensler, Frank Buda, Prashant Yerramalli, and Angelica Annino told SEC staff that they did not use non-email, messaging platforms other than text message to send or receive messages concerning SEC | Objected to for the same reasons set forth in ¶ 10, and pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4), because he cited Declaration either does |

| | | |
|---|---|---|
| | business during the relevant time period. Hyde-Michaels Decl. ¶17. | not support the proposition it is cited for or does not do so in an admissible form. |
| 22. | SEC staff also searched Allison Herren Lee's SEC-issued cell phone for messages sent via platforms other than Jabber and did not identify any responsive records. Tallarico Decl. ¶¶7, 10. | Objected to for the same reasons set forth in ¶¶ 12, 13, and 16, and pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). |
| 23. | In connection with FOIA Request No. 22-01719-FOIA, pursuant to FOIA Exemption 5, the SEC withheld in full the five pages of responsive records referred to in paragraphs 17 and 18 under the deliberative process privilege because they contain pre-decisional and deliberative information. Tallarico Decl. ¶12. | Admitted that five pages referenced were withheld.<br><br>To the extent that this statement could be construed to indicate that the agency's assertions themselves are true, Plaintiff objects pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4) because the assertions regarding FOIA exemptions are legal conclusions solely within the province of the court and are not statements of material fact within the competence of the declarant, and because such assertions are inadmissible or not based on admissible evidence. |
| 24. | Specifically, the records responsive to FOIA Request No. 22-01719-FOIA consist of discussion and analysis concerning SEC proposed rulemaking. Tallarico Decl. ¶12; Ex. 1 (Vaughn index). The records reflect SEC staff's consultative discussions on aspects of proposed climate-related rulemaking prior to the agency's release of the proposed rules. *Id.* | To the extent that the content of the document is Discussed ("discussion and analysis concerning SEC proposed rulemaking"), Plaintiff objects pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). The Declaration does not support these assertions in an admissible form, but without waiving such objections Plaintiff also notes that the SEC appears to be asserting the general subject of records absent required detail. |

| | | |
|---|---|---|
| 25. | SEC staff have reviewed the records withheld under the deliberative process privilege, conducted a line-by-line segregability analysis, and concluded that they are not segregable. Tallarico Decl. ¶13. | Objected to pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). The cited Declaration either does not support this conclusion, or does not support it in an admissible form (because it appears to be outside the personal knowledge of the Declarant and/or based on hearsay not within a hearsay exemption and outside the scope of this Court's precedents permitting hearsay when such hearsay is based on the declarant's supervision of a search).<br><br>To the extent that this statement could be construed to indicate that the agency's assertions regarding the applicability of exemptions and the agency's segregability analysis are themselves true, Plaintiff objects insofar as this statement is a legal conclusion and not a statement of material fact. |
| 26. | SEC staff have reviewed the records responsive to FOIA Request No. 22-01719-FOIA to determine if it is reasonably foreseeable that disclosure would harm an interest protected by one of the FOIA's statutory exemptions or the disclosure is prohibited by law. Tallarico Decl. ¶14. The SEC has determined that it is reasonably foreseeable that disclosure of these records would cause harm. *Id.* | Objected to for the same reasons set forth in ¶25, *supra*. |
| 27. | Disclosure of the information relating to internal SEC deliberations that the SEC is withholding under the deliberative process privilege would chill discussions regarding SEC proposed rulemaking. Tallarico Decl. ¶15. If these documents were disclosed in response to FOIA requests, staff across the SEC would likely limit their discussions and inhibit their candor in discussing proposed rulemaking. *Id.* Such chilling would make | Objected to because such statements are speculative, inadmissible, and not based on admissible or reliable evidence, or are conclusions of law. Fed. R. Civ. P. 56 (c)(2) and (c)(4). |

| | | |
|---|---|---|
| | rulemaking less efficient and effective as it would likely prevent robust discussions among SEC staff in drafting proposed rules. *Id.* | |
| 28. | Additionally, Plaintiff's FOIA requests focus on records concerning "environmental and energy policy," including records relating to SEC climate-related rules. Tallarico Decl. ¶16. Releasing internal deliberations that took place about these rules prior to their proposal would interfere with the SEC's longstanding approach to rulemaking, which relies on significant internal deliberations and debate on sensitive topics that affect U.S. securities markets. *Id.* Releasing these discussions would also cause public confusion as they pre-date the agency's release of the proposed rules. *Id.* | With reference to the focus of Plaintiff's requests, Plaintiff refers the Court to the requests themselves, which are the best representation of Plaintiff's "focus." The remainder of this statement is objected to for the same reasons set forth above, including that the SEC is speculating as to what release would entail and not providing admissible evidence in support of its assertions. Fed. R. Civ. P. 56 (c)(2) and (c)(4). |
| 29. | Overall, disclosure would jeopardize the candid and comprehensive discussions that are essential for efficient and effective agency rulemaking. Tallarico Decl. ¶17. | Objected to pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4) because this statement is speculative and not based upon admissible evidence. |