**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ENERGY POLICY ADVOCATES, | |
| Plaintiff, | |
| v. | No. 1:22-cv-01497-TNM |
| SECURITIES AND EXCHANGE COMMISSION, | |
| Defendant. | |

## <u>REPLY MEMORANDUM IN SUPPORT OF<br>SEC'S MOTION FOR SUMMARY JUDGMENT</u>

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 1

      A.    The SEC's searches for responsive records were adequate. .................................. 1

      B.    The SEC properly withheld records under FOIA Exemption 5............................. 7

            1.    The SEC's *Vaughn* Index sufficiently describes the information withheld
                  under the deliberative process privilege. .................................................... 7

            2.    The SEC sufficiently demonstrated the foreseeable harm that would
                  necessarily occur should the withheld records be released....................... 10

      C.    No material facts are in dispute. .......................................................................... 15

III.  CONCLUSION................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*ACLU v. BOP*, No. 20-2320 (RBW), 2022 WL 1262112 (D.D.C. Apr. 28, 2022) ............... 16, 17

*Amiri v. NSF*, No. 1:20-cv-02006 (TNM), 2021 WL 4438910 (D.D.C. Sept. 28, 2021) ............. 10

*Barnard v. DHS*, 531 F. Supp. 2d 131 (D.D.C. 2008) .................................................................. 17

*Brophy v. Dep't of Defense*, No. 05-360 (RMC), 2006 WL 571901 (D.D.C. Mar. 8, 2006) ....... 17

*Chelmowski v. United States*, No. 17-1394 (JEB), 2021 WL 3077919

    (D.D.C. July 21, 2021) ..................................................................................................... 2, 15

*Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585 (D.D.C. Nov. 21, 2022) ........ 14

*Elec. Frontier Found. v. U.S. DOJ*, 826 F. Supp. 2d 157 (D.D.C. 2011) .................................... 10

*Elec. Privacy Info. Ctr. v. FBI*, No. 1:17-cv-00121 (TNM), 2018 WL 2324084 (D.D.C. May 22,

    2018) ............................................................................................................................... 9

*Elkem Metals Co. v. United States*, 126 F. Supp. 2d 567 (C.I.T. 2000) ........................................ 9

*Energy Pol. Advocates v. U.S. Dep't of State*, No. 1:19-CV-03307, 2023 WL 4198200 (D.D.C.

    June 27, 2023) ............................................................................................................. 11, 12

*Freedom Watch, Inc. v. Mueller*, 453 F. Supp. 3d 139 (D.D.C. 2020) ......................................... 15

*Hainey v. Dep't of Interior*, 925 F. Supp. 2d 34 (D.D.C. 2013) ................................................... 16

*Hall & Assocs. v. U.S. EPA*, No. CV 19-330, 2022 WL 4482569 (D.D.C. Sept. 27, 2022) .......... 8

*Hennessey v. U.S. Agency for Int'l Dev.*, No. 97-1133, 1997 WL 537998 (4th Cir. 1997)............ 9

*ICM Registry, LLC v. U.S. Dep't of Commerce*, No. 06-0949 (JR), 2007 WL 1020748 (D.D.C.

    March 27, 2007).............................................................................................................. 9

*Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252 (D.D.C. 2004)........................... 10

*Keeping Gov't Beholden, Inc. v. U.S. DOJ*, No. CV 17-1569, 2021 WL 5918627 (D.D.C. Dec.

    13, 2021) ....................................................................................................................... 14

*Landmark Legal Found. v. U.S. EPA*, 272 F. Supp. 2d 59 (D.D.C. 2003) ..................................... 2

*Lawyers' Comm. for Civil Rights v. United States OMB*, No. 18-645 (EGS), 2023 WL 3433978

    (D.D.C. May 12, 2023) ............................................................................................ 8, 12, 14

*Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020) .................................... 11

*Murray v. Fed. Bureau of Prisons*, 741 F. Supp. 2d 156 (D.D.C. 2010)........................................ 3

*Nation Magazine v. United States Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995) ......................... 4

*Project on Gov't Oversight v. DHS*, No. l:18-CV-2051-RCL, 2023 WL 2139380 (D.D.C. Feb.

    21, 2023) ................................................................................................................................ 14

*Project on Gov't Oversight, Inc. v. U.S. Dep't of the Treasury*, No. 21-cv-2797 (DLF), 2022 WL

    17719571 (D.D.C. Dec. 15, 2022) ....................................................................................... 5, 6

*Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194 (D.D.C. Oct. 5, 2007)..... 9

*Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021)....................... 14

*Santos v. DEA*, 357 F. Supp. 2d 33 (D.D.C. 2004)........................................................................ 3

*Schotz v. U.S. DOJ*, No. 14-1212, 2016 WL 1588491 (D.D.C. Apr. 20, 2016) ............................ 2

*Steinberg v. United States DOJ*, 23 F.3d 548 (D.C. Cir. 1994).................................................. 3, 4

*Weisberg v. United States Dep't of Justice*, 627 F.2d 365 (D.C. Cir. 1980) .................................. 3

*Wilderness Soc. v. Dep't of Interior*, 344 F. Supp. 2d 1 (D.D.C. 2004) ......................................... 9

I.      **INTRODUCTION**

Defendant U.S. Securities and Exchange Commission ("SEC") submits this reply in further support of its motion for summary judgment concerning the two Freedom of Information Act ("FOIA") requests at issue in this litigation.  The SEC also includes two additional supporting declarations[1] to eliminate any doubt that summary judgment in the SEC's favor is warranted.

In its Opposition, Plaintiff asserts that the SEC did not perform a proper search for records, did not provide a sufficient *Vaughn* Index, and did not demonstrate that it reasonably expected that disclosure of the documents would harm the SEC's interests in having a free discussion in the course of rulemaking.  *See* Opposition, ECF 18 ("Opp.") at 3-15.  Plaintiff's arguments, however, are belied by clear readings of the record and relevant case law.  Plaintiff also fails to assert any genuine issue of material fact.

Because the SEC has performed an adequate search in connection with both FOIA Request Nos. 22-01719-FOIA and 22-01750-FOIA and appropriately withheld information in connection with FOIA Request No. 22-01719-FOIA, the Court should grant the SEC's motion for summary judgment.

II.     **ARGUMENT**

        **A.  The SEC's searches for responsive records were adequate.**

Plaintiff levels three objections to the SEC's searches for responsive records, none of which have merit.  First, contrary to Plaintiff's assertion that the SEC's supporting declarations "merely stat[e] the office that completed the search" (Opp. at 5), the Hyde-Michaels Declaration

---

[1] The Supplemental Declaration of Carrie Hyde-Michaels is referred to herein as "Suppl. Hyde-Michaels Decl."  The Declaration of Elizabeth M. Murphy is referred to herein as "Murphy Decl."

makes clear that the SEC's Office of Information Technology ("OIT") conducted electronic searches for SEC email correspondence and Jabber records based on the parameters Plaintiff stated in its FOIA requests and FOIA Office staff reviewed those records for responsiveness. *See* ECF 17-2 at ¶7 (OIT staff searched for Jabber messages belonging to requested custodians and SEC staff searched returned messages for specific requested search terms), ¶¶9-10 (OIT staff searched SEC email correspondence of requested custodians using requested search terms and FOIA Office staff reviewed records for responsiveness).  As required under the FOIA, the Hyde-Michaels Declaration "identif[ies] the affiant[] and [her] role[] in the agency [including her involvement in the processing of the requests], discuss[es] how the FOIA request[s were] disseminated within [the SEC's] office and the scope of the search, which particular files were searched, and the chronology of the search."  *Landmark Legal Found. v. U.S. EPA*, 272 F. Supp. 2d 59, 66 (D.D.C. 2003).  The SEC is not required to provide the names of staff members who conducted searches, and Plaintiff points to no need for such information.  *See Chelmowski v. United States*, No. 17-1394 (JEB), 2021 WL 3077919, at *7 (D.D.C. July 21, 2021) ("Courts in this District have repeatedly rejected the argument that an agency's [FOIA] declaration must identify the individuals, by name, who conducted the searches.") (internal quotations omitted).

The Hyde-Michaels Declaration also explains why the SEC searched certain locations for responsive records but not others.  *See* ECF 17-2 at ¶¶13-14 (explaining why OIT did not search custodians' personal email accounts or SEC-issued cell phones), ¶15 (explaining why staff searched for Jabber messages only between SEC staff), ¶16 (explaining why staff did not search for non-email electronic messages sent via other platforms). *See Schotz v. U.S. DOJ*, No. 14-1212, 2016 WL 1588491, at *6 (D.D.C. Apr. 20, 2016) (finding agency's "declarant has

satisfactorily described the files that were searched, the search methods employed and explained why those files were the only ones likely to contain responsive records").

The cases Plaintiff cited relating to the "adequacy of the SEC's declaration" involve conclusory, undetailed declarations and are readily distinguishable from this case. *See Santos v. DEA*, 357 F. Supp. 2d 33, 37 (D.D.C. 2004) (agency affidavit "include[d] only a conclusory statement regarding the [agency's] search for responsive documents: 'The records responsive to the plaintiff's FOIA / PA request are criminal investigatory records that have been compiled for legitimate law enforcement investigations. The records concern the criminal investigation of [individual] and other individuals for money laundering of narcotics proceeds.'") (Opp. at 4); *Weisberg v. United States Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980) (agency "affidavit state[d] only that: I have conducted a review of FBI files which would contain information that [plaintiff] has requested. . . . The FBI files to the best of my knowledge do not include any information requested by [plaintiff] other than the information made available to him.") (Opp. at 4); *Steinberg v. United States DOJ*, 23 F.3d 548, 551-52 (D.C. Cir. 1994) (agency declaration "fail[ed] to describe *in any detail* what records were searched, by whom, and through what process") (emphasis added) (Opp. at 4); *Murray v. Fed. Bureau of Prisons*, 741 F. Supp. 2d 156, 163 (D.D.C. 2010) (agency's "declarant [did] not describe a search method at all. Rather, she state[d] only that the [agency] searched two systems of records and found responsive records there") (Opp. at 4).

Next, Plaintiff complains that the SEC did not search "reasonably foreseeable variations" of the search terms "GHG," "climate risk," and "CRD" in connection with the SEC's search for records responsive to FOIA Request No. 22-01719-FOIA.  Opp. at 5.  Plaintiff's FOIA request did not ask that the SEC search for "plurals and the written-out form of each acronym."  *Id.*; ECF

17-1 at ¶1.  As Plaintiff admits, the only search term for which Plaintiff requested an expanded

form was "GHG," specifically "in any form, e.g., including also in GHGs."  *Id.*  As stated in the

Tallarico Declaration, SEC staff worked with Chair Gary Gensler, Frank Buda, Prashant

Yerramalli, and Angelica Annino to search each individual's SEC-issued cell phone for text

messages and other messages (sent or received via Facebook, Twitter, chat, etc.) containing the

requested search term "GHG(s)."  ECF 17-3 at ¶9.  SEC staff also searched Commissioner

Allison Herren Lee's cell phone for text messages and other messages (sent or received via

Facebook, Twitter, chat, etc.) containing the requested search term "GHG(s)."  *Id.* at ¶10.

Indeed, the SEC's search for responsive text and electronic messages containing "GHG" would

have returned any records containing "GHGs" because, in the iPhone text message search box

and in the search function of the spreadsheets of Jabber messages, a search for the word in

singular form would also return the word in plural form.  Suppl. Hyde-Michaels Decl. at ¶¶5-6.

To the extent Plaintiff sought "GHG" in any other "form," Plaintiff could have specified the

additional search terms it sought, and Plaintiff has not pointed to any cases that suggest that

when a FOIA request specifies search terms an agency has an obligation to use additional search

terms.  Plaintiff relies on *Nation Magazine* and *Steinberg* (Opp. at 3, 5), but, unlike here, those

cases did not involve FOIA requests with specific search terms.  *See Nation Magazine v. United*

*States Customs Serv.*, 71 F.3d 885, 888, 890 (D.C. Cir. 1995); *Steinberg*, 23 F.3d at 549-50.

Finally, Plaintiff claims that certain SEC "revelations" about SEC staff's use of non-SEC

email accounts "cast[] doubt on SEC's assertions" (Opp. at 5-6), but Plaintiff mischaracterizes

both the SEC's declaration and the SEC's response to Plaintiff's other FOIA request not at issue

in this litigation.  As previously explained, in this case, OIT conducted an electronic search of

the requested custodians' SEC email correspondence.  ECF 17-1 at ¶8.  OIT is unable to conduct

4

electronic searches of non-SEC email correspondence.  ECF 17-1 at ¶10.  Consequently, SEC

staff asked the requested custodians, including SEC Chair Gary Gensler, whether they use their

personal email addresses to conduct SEC business.  *Id*.  They stated that they do not use their

personal email addresses to conduct SEC business.  *Id*.  Indeed, as the SEC explained to Plaintiff,

in the event that Chair Gensler is contacted about SEC business via his personal account, his

practice is to forward those emails to his SEC email account and to copy staff in his office on

those emails.  *See* ECF 18-2 at 1; ECF 18 at 5.  The SEC was not obligated to go further in its

search for responsive records among the custodians' personal email accounts because any

responsive document in the custodian's personal email would have been forwarded to the SEC

email system, which SEC staff searched.  *See, e.g.*, *Project on Gov't Oversight, Inc. v. U.S.*

*Dep't of the Treasury*, No. 21-cv-2797 (DLF), 2022 WL 17719571, at *3 (D.D.C. Dec. 15, 2022)

(concluding that agency "not obligated to search personal email accounts" and noting that

"[c]ourts presume that agency records are unlikely to be found solely on personal email accounts

since officials are prohibited from using them for official business without forwarding or

copying emails to their official account").

Separately from this litigation, Plaintiff submitted a FOIA request for "all emails

forwarded to SEC at any point from November 8, 2020 through October 12, 2022, inclusive, by

SEC Chairman Gary Gensler from a non-.gov email account."  ECF 18-2 at 1.  That FOIA

request was prompted by the SEC's explanation to Plaintiff that, in the event that Chair Gensler

is contacted about SEC business via his personal account, his practice is to forward those emails

to his SEC email account and to copy staff in his office on those emails.  *See id.*; ECF 18 at 5.

The SEC identified 227 pages of records responsive to that request and released 191 pages of

records to Plaintiff with certain information redacted pursuant to FOIA exemptions.  *See* ECF

18-2 at 1.  By its own terms, that FOIA request sought SEC email correspondence ("all emails forwarded to SEC"), so, consistent with the SEC's explanation that OIT can conduct electronic searches of SEC email, the SEC was able to conduct a search for email records sent from Chair Gensler's personal email accounts to SEC email addresses that were responsive to that FOIA request.  Even if Plaintiff's baseless assertion that "non-.gov-account emails discussing SEC business . . . are not subject to the agency's obligation to preserve and produce responsive documents" (Opp. at 6) was at issue in this case, Plaintiff's argument that it received emails Chair Gensler forwarded to the SEC shows that Chair Gensler forwarded emails about SEC business received in his personal email account to his SEC email account and to staff in his office, so those emails are available through a search of the SEC's email systems.[2]  *See Project*, 2022 WL 17719571, at *3 ("The presumption is that officials followed [agency's] email policy requiring any work-related emails to be forwarded to official email accounts.").

Plaintiff also appears to connect its separate FOIA request for Chair Gensler's forwarded emails with a gripe that the SEC's OIT could not conduct electronic searches of text messages sent from SEC-issued iPhones.  *See* Opp. at 5-6.  Plaintiff fails to show any evidence supporting its belief that OIT could, in fact, have searched for such text messages.  *See id.*  Further, as previously explained, even though OIT could not conduct electronic searches of text messages sent from SEC-issued iPhones, SEC staff still searched for text messages responsive to FOIA Request No. 22-01719-FOIA.  *See* ECF 17-3 at ¶¶9-10.

---

[2] The SEC objects to Plaintiff's counsel's mischaracterization of Plaintiff's Exhibit 1, namely that the appended May 16, 2023 letter from the SEC's FOIA Office in connection with its release of records responsive to the separate FOIA request not at issue in this case "affirm[s] that official records reside on senior officials' (at minimum Chairman Gary Gensler's) non-.gov email accounts."  ECF 18-1 at ¶4.  The SEC refers to that FOIA Office letter for a complete and accurate recitation of its contents.  *See* ECF 18-2.

Plaintiff's half-hearted complaints fail to identify any concrete issues with the SEC's searches for responsive records.  As reflected in its supporting declarations, the SEC searched for the specific types of records belonging to the specific custodians containing the specific search terms, all as Plaintiff requested, and therefore conducted adequate searches.  *See* Memorandum of Points and Authorities, ECF 17-5 ("Memo") at 7-10.[3]

### B. The SEC properly withheld records under FOIA Exemption 5.

#### 1. The SEC's *Vaughn* Index sufficiently describes the information withheld under the deliberative process privilege.

Plaintiff complains that the SEC's *Vaughn* Index and declarations are insufficiently detailed (Opp. at 7-11) but ignores the descriptive information provided for each of the five entries.  The withheld messages pertain to proposed SEC climate-related rulemaking, and the Index identifies the SEC staff participating in the messages and explains that they contain discussion, analysis, and drafting language relating to the proposed rulemaking.  *See* ECF 17-4. The Index further provides for each message information about what was being considered in the messages.  *See id.* at entry 1 (discussion about "whether the SEC's March 2022 proposed rule about climate-related disclosures would address particular subject matter"), entry 2 (discussion about "an assessment about whether to include particular provisions in the SEC's March 2022 proposed rule about climate-related disclosures"), entry 3 (discussion about "the edits to language in the SEC's March 2022 proposed rule about climate-related disclosures"), entry 4

---

[3] In Plaintiff's counsel's declaration, Plaintiff's counsel guesses about the content of SEC Jabber messages based on entirely unrelated "experience" with other federal agencies using other messaging systems.  *See* ECF 18-1 at ¶3 (mentioning "other federal agencies, for example the United States Environmental Protection Agency" and use of "Microsoft Teams 'Chats'").  Not only is this information not discussed in the Opposition, but, on its face, it is completely unrelated to any issues here.

(discussion about "ESG," specifically "the SEC's May 2022 proposed rule concerning the enhancement of disclosures by investment advisers and investment companies about ESG investment practices"), entry 5 (discussion about "potential edits to the SEC's May 2022 proposed rule concerning the enhancement of disclosures by investment advisers and investment companies about ESG investment practices").  Providing any additional detail about the records, as Plaintiff demands, would impermissibly expose SEC staff's deliberations about the proposed climate-related rulemaking.  *See* ECF 17-3 at ¶¶12-17.  Plaintiff argues that "neither declaration establishes the withheld content is deliberative" (Opp. at 8), but the *Vaughn* Index explains that the messages reflect the agency's consultative analysis and discussions on various aspects of the proposed rulemaking, including drafting language in the proposed rules (*see* ECF 17-4).  Plaintiff also objects that the SEC's explanations are "repetitive" and "purported bases are nearly identical" (Opp. at 8, 10), but the withheld records all pertain to the same subject matter, namely proposed climate-related rulemaking, so similar explanations are expected.  *See Hall & Assocs. v. U.S. EPA*, No. CV 19-330, 2022 WL 4482569, at *24 (D.D.C. Sept. 27, 2022) (approving *Vaughn* index where "many [] entries contain the same language . . . because many of the withheld documents are similar"); *Lawyers' Comm. for Civil Rights v. United States OMB*, No. 18-645 (EGS), 2023 WL 3433978, at *5 (D.D.C. May 12, 2023) ("a *Vaughn* index is not inadequate simply because an agency grouped similar documents into a single category and provided the same reason for withholding information across that category").

Additionally, though Plaintiff objects that the SEC withheld the messages in full (Opp. at 7), it ignores that the records at issue are short messages.  Suppl. Hyde-Michaels Decl. at ¶7.  Plaintiff provides no reason to believe short messages containing deliberations also contain segregable non-deliberative information.  Plaintiff argues that the "SEC surely and necessarily

has hidden factual and nondeliberative material from view" (Opp. at 7), but "[c]ourts have allowed agencies to withhold factual information that is 'inextricably intertwined' with deliberative material." *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 203 (D.D.C. Oct. 5, 2007), *report and recommendation adopted*, 520 F. Supp. 2d 194 (D.D.C. Nov. 8, 2007).  In addition, the SEC "enjoy[s] 'a presumption that they complied with the obligation to disclose reasonably segregable material.'" *Elec. Privacy Info. Ctr. v. FBI*, No. 1:17-cv-00121 (TNM), 2018 WL 2324084, at *6 (D.D.C. May 22, 2018) (McFadden, J.).

Plaintiff does not meaningfully counter the SEC's argument that correspondence like these messages between agency staff about proposed rulemaking is appropriately withheld pursuant to the deliberative process privilege.  Memo at 12-13.  Indeed, the cases Plaintiff cited are inapposite, distinguishable, and/or out of circuit.  *See Elkem Metals Co. v. United States*, 126 F. Supp. 2d 567, 576-77 (C.I.T. 2000) (ordering release of factual schedules because, unlike correspondence here reflecting "give-and-take of the [SEC's] decision making process," dates "were incorporated into the final published schedule[s]" and "disclosure would not reveal [agency] deliberations") (Opp. at 10); *Hennessey v. U.S. Agency for Int'l Dev.*, No. 97-1133, 1997 WL 537998, at *5 (4th Cir. 1997) (report at issue was "final," "seemingly entirely factual in character," and "prepared with the expectation that it would be shared with the very party from whom the government now attempts to withhold the document") (Opp. at 11); *ICM Registry, LLC v. U.S. Dep't of Commerce*, No. 06-0949 (JR), 2007 WL 1020748, at *6 (D.D.C. March 29, 2007) (unlike here where the SEC explained that records relate to deliberations about the content and language of proposed climate-related rulemaking, deliberative process privilege did not apply where "government's submissions fail to specify the deliberative process reflected in these documents") (Opp. at 11); *Wilderness Soc. v. Dep't of Interior*, 344 F. Supp. 2d 1, 12-13

9

(D.D.C. 2004) (unlike agency there that did not identify specific "wilderness issues," the SEC specified particular agency rules, namely the "SEC's March 2022 proposed rule about climate-related disclosures" and "SEC's May 2022 proposed rule concerning the enhancement of disclosures by investment advisers and investment companies about ESG investment practices") (Opp. at 11); *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 264 (D.D.C. 2004) (unlike agency that did "not identify *specific* final decisions or decisionmaking processes to which the documents contributed," SEC identified proposed March and May 2022 climate-related rules) (emphasis in original) (Opp. at 11); *Elec. Frontier Found. v. U.S. DOJ*, 826 F. Supp. 2d 157, 168-69 (D.D.C. 2011) (unlike "inadequate" description there that "fail[ed] to identify a specific deliberative process to which the withheld email messages contributed," Index here describes discussions and analysis between SEC staff about proposed rulemaking) (Opp. at 11).

Because the SEC's *Vaughn* Index "contain[s] an adequate description of the records and a plain statement of the exemptions relied upon," it has satisfied its obligations under the FOIA. *Amiri v. NSF*, No. 1:20-cv-02006 (TNM), 2021 WL 4438910, at *5 (D.D.C. Sept. 28, 2021) (McFadden, J.) (internal quotations omitted).

### 2. The SEC sufficiently demonstrated the foreseeable harm that would necessarily occur should the withheld records be released.

Plaintiff argues that the SEC has offered insufficiently "general statements" without "meaningful detail" about how the release of the withheld records would harm the SEC.  *See* Opp. at 12-15.  But Plaintiff skates over the sufficient detail provided in the Tallarico Declaration about the foreseeable harm that would arise should the SEC release these records. To eliminate any doubt about the foreseeability of harm here, the SEC provides a further

declaration from Elizabeth M. Murphy, the Associate Director for Legal and Regulatory Policy in the Division of Corporation Finance of the SEC.  *See* Murphy Decl. at ¶¶1, 5.

An agency must "provide a 'focused and concrete demonstration of why disclosure of the particular type of material' will cause foreseeable harm 'in the specific context of the agency action at issue[,]'" arguing "that disclosure *would* have that effect in context."  *Energy Pol. Advocates v. U.S. Dep't of State*, No. 1:19-CV-03307 (TNM), 2023 WL 4198200, at *3 (D.D.C. June 27, 2023) (McFadden, J.).  "But even without enough explanation from the agency, the 'context and purpose' of withheld information can support a finding of foreseeable harm."  *Id.* The SEC's declarations satisfy that requirement, as they emphasize the chilling effect of such disclosure.  *See* ECF 17-3 at ¶15 (disclosure "*would* chill discussions regarding SEC proposed rulemaking" and "*would* make rulemaking less efficient and effective as it would likely prevent robust discussions among SEC staff in drafting proposed rules") (emphasis added); Murphy Decl. at ¶6 ("Disclosure of the information that the SEC is withholding under the deliberative process privilege would chill discussions in connection with the formulation of policy proposals for the Commission's consideration.").  The Tallarico Declaration further explains that "[r]eleasing internal deliberations about these proposed [climate-related] rules prior to their public release *would* interfere with the SEC's longstanding approach to rulemaking, which relies on significant internal deliberations and debate on sensitive topics that affect U.S. securities markets."  ECF 17-3 at ¶16 (emphasis added).  Courts have found that similar declaration language adequately explained foreseeable harm.  *See, e.g.*, *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (agency "affidavit adequately explained that full disclosure of [records] would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and recommendations,' thus impairing 'the forthright internal discussions necessary

for efficient and proper adjudication of administrative appeals'"); *Lawyers' Comm.*, 2023 WL 3433978, at *9-10 (finding declaration sufficient that stated, among other things, "disclosure 'would prompt [office] staff to be less candid' or perhaps not meaningfully participate in the deliberative process, which in turn would 'seriously harm [office's] ability to function" and also "would inhibit [office's] ability to have frank and open discussions on policy matters with other parts of the Executive Branch").

The SEC's declarations further note the risk of public confusion should the withheld records be released.  *See* ECF 17-3 at ¶16 (release "would also cause public confusion as [records] pre-date the public release of the final proposed rules"); Murphy Decl. at ¶8 (release "could also confuse the public by suggesting that views and approaches that were dismissed or changed during the drafting process are still relevant options being considered")*.*  Indeed, "the D.C. Circuit has 'long recognized that the risk of public confusion has a special force with respect to disclosures of agency positions or reasoning concerning proposed *policies*.'"  *Energy Pol. Advocates*, 2023 WL 4198200, at *4 (emphasis in original) ("All of the redacted documents discuss subordinates' thoughts and analysis on proposed policies for decision-makers to review. Releasing such inchoate material could certainly mislead and foreseeably harm the agency's processes.") (internal citation omitted); *Lawyers' Comm.*, 2023 WL 3433978, at *10-11 (concluding that agency sufficiently explained "how release of the documents [at issue] . . . would cause [public confusion]" when declarant stated, *inter alia*, that "release of the draft documents . . . would cause public confusion because those documents contain arguments for and against certain text as well as changes, comments, and edits").

The Murphy Declaration provides further detail about the foreseeability of harm, including about the chilling effect.  The declaration highlights "the critical importance of the free

flow of ideas and the need for extensive coordination of rulemaking projects and robust deliberation among a wide range of SEC staff members." Murphy Decl. at ¶5. The SEC rulemaking process "requires open and collaborative dialogue" in which "SEC staff must consider a wide variety of options, including rule focus, breadth, and language." *Id.* at ¶6. When proposing and drafting a rule, SEC "Staff at all levels can have a variety of views and opinions on a proposed rule that they must share and discuss to determine the best result," and "often determine that certain ideas have no merit and must be dismissed." *Id.* During the drafting process, staff "may change their views of what approach is best," "particularly through collaborating with colleagues using a variety of communication methods and technologies." *Id.*

Releasing the withheld records "would show that discussions about a rule prior to agency proposal could be released under the FOIA, and if SEC staff knew such a release was possible, they would be reluctant to record their views and engage in open discussion during the rule drafting process." Murphy Decl. at ¶7. "Such a chilling could adversely affect rulemaking because good solutions are often found as staff share all possible approaches, even those that are ultimately dismissed." *Id.* It "would also slow down the rulemaking process" as "ideas would be discussed in meetings rather than in emails and messages that can be circulated with much less scheduling." *Id.*

Specifically with respect to the SEC's climate-related rulemaking, the "SEC received a high volume of public comment[s] in response to a . . . request for public input on climate disclosure" and "to the proposing release issued in March 2022." Murphy Decl. at ¶9. In the context of "controversial proposals and sensitive topics" like the climate-related rulemaking, "[i]t is particularly important to enable the free flow of information and to maintain an unfettered

deliberative process . . . so that all aspects of the proposal and differing viewpoints can be openly and expansively discussed." *Id.*

As such, through its original and supplemental declarations, the SEC has met its burden and "adequately linked the harm to [the SEC's] . . . intra-agency discussions to the specific information withheld here." *Lawyers' Comm.*, 2023 WL 3433978, at *10.

Plaintiff also complains that the SEC does not address foreseeable harm in the *Vaughn* Index or the Hyde-Michaels Declaration (Opp. at 12-13) but fails to show that the SEC is required to do so in any source in addition to the Tallarico Declaration. *See Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585, at *2 (D.D.C. Nov. 21, 2022) (McFadden, J.) (agency may rely on *Vaughn* index, declarations, or both in support of summary judgment); *Keeping Gov't Beholden, Inc. v. U.S. DOJ*, No. CV 17-1569, 2021 WL 5918627, at *11 (D.D.C. Dec. 13, 2021), *aff'd sub nom. Brody v. U.S. DOJ*, No. 22-5043, 2023 WL 1511679 (D.C. Cir. Feb. 3, 2023) ("the *Vaughn* index must be considered in conjunction with [the agency's] supplemental declaration").  Finally, Plaintiff also relies on cases that are distinguishable from the circumstances here.  *See Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370-72 (D.C. Cir. 2021) (unlike here where records are deliberative and consist of messages on same rulemaking subject, foreseeability of harm standard not met in connection with, among others, records containing "purely factual material" and where declarations did not specify harm relating to each different kind of record) (Opp. at 12-14); *Project on Gov't Oversight v. DHS*, No. l:18-CV-2051-RCL, 2023 WL 2139380, at *9-10 (D.D.C. Feb. 21, 2023) (declarations there did not specifically articulate why disclosure of records would chill deliberations or create public confusion) (Opp. at 14-15).

### C.  No material facts are in dispute.

Plaintiff's "Counter Statement of Disputed Facts" (ECF 18 at 16-24) ("Counter Statement"), which Plaintiff does not mention anywhere in its Opposition, does not raise any genuine dispute of material fact sufficient to defeat summary judgment.  Plaintiff purports to object to several SEC statements on various bases, including that the SEC's declarants did not identify the specific individuals who performed the searches for records (Counter Statement at ¶¶8, 9, 12, 13, 15, 16, 18, 22), specify their "supervisory role" over the searchers (*id.* at ¶¶9, 10, 12, 13, 15, 16, 18, 20, 21, 22), explain in detail why the SEC is unable to conduct certain electronic searches (*id.* at ¶¶10, 20, 21), or explain why the declarant has knowledge sufficient to make the statements in the declaration (*id.* at ¶¶10-12, 25).  Plaintiff also repeatedly argues that declarants' statements are "based on hearsay not within a hearsay exemption and outside the scope of this Court's precedents permitting hearsay when such hearsay is based on the declarant's supervision of a search."  *Id.* at ¶¶8-12, 25.

Plaintiff did not point to any legal authority for its positions beyond bald citations to the Federal Rules of Civil Procedure.  Plaintiff's objections are meritless.  First, there is no obligation for the SEC to reveal the specific identities of the SEC staff members who performed the searches for responsive records.  *See Chelmowski*, 2021 WL 3077919, at *7; *see also Freedom Watch, Inc. v. Mueller*, 453 F. Supp. 3d 139, 149 (D.D.C. 2020) ("'FOIA does not require the disclosure of the names or information about agency staff involved in processing FOIA requests.'").  Second, the SEC's supporting declarations include details about the declarants' roles, why they would be knowledgeable about the searches conducted in this case, and why they would be familiar with the SEC's ability to conduct certain electronic searches.  *See* ECF 17-2 at ¶¶1, 2 (stating that "[a]s a FOIA Branch Chief," she is "responsible for, among

15

other things, coordinating and processing FOIA requests, organizing searches for documents responsive to FOIA requests, making determinations as to whether requested information is exempt from disclosure under FOIA, and communicating with FOIA requesters" and "relied on my personal knowledge, or where my personal knowledge was lacking or incomplete, I have relied on my review of records routinely maintained in the ordinary course of business or representations made to me by other SEC staff"); Suppl. Hyde-Michaels Decl. at ¶3 (stating that "[a]s the FOIA Branch Chief who supervised the FOIA Office research specialist to whom Plaintiff's FOIA Request Nos. 22-01719-FOIA and 22-01750-FOIA were assigned, I oversaw the processing of Plaintiff's two FOIA requests, and SEC staff kept me apprised of the searches conducted for responsive records"); ECF 17-3 at ¶¶1, 3 (stating he is "familiar with the SEC's procedures for responding to and searching for documents responsive to FOIA requests" and his statements are "based on my review of the official files and records of the SEC maintained routinely in the ordinary course of business, my own personal knowledge, or information I acquired through the performance of my official duties or from other SEC staff").  Indeed, "it is well settled that 'FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties.'"  *Hainey v. Dep't of Interior*, 925 F. Supp. 2d 34, 41 (D.D.C. 2013); *see also ACLU v. BOP*, No. 20-2320 (RBW), 2022 WL 1262112, at *3 (D.D.C. Apr. 28, 2022) ("[A]n agency declarant need not have been personally involved in the events reflected in, or preparation of, the records at issue but merely have personally been advised about or reviewed those records to meet the Rule 56 standard[.]") (internal quotations omitted).

Further, as the SEC previously noted, portions of the SEC's declarations referring to information provided by other SEC staff comport with hearsay requirements under FOIA case

law, as courts allow agencies to supply declarations from employees responsible for supervising or coordinating search efforts rather than the agency employee who performed the search. Memo at 8; *see also ACLU*, 2022 WL 1262112, at *5 ("'Hearsay evidence in testimony by agency declarants based upon information gleaned from personal familiarity with agency practices or from information relayed by other agency personnel' has been deemed admissible in FOIA cases."); *Barnard v. DHS*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) ("Declarants are not required to participate in the search for records."); *Brophy v. Dep't of Defense*, No. 05-360 (RMC), 2006 WL 571901, at *4 (D.D.C. Mar. 8, 2006) (noting that "[d]eclarations that contain hearsay in recounting searches for documents are generally acceptable" and D.C. Circuit "long ago recognized the validity of the affidavit of an individual who supervised a search for records even though the affiant had not conducted the search himself").

### III.   <u>CONCLUSION</u>

For the foregoing reasons, and the reasons described in its opening papers, the SEC respectfully requests that the Court grant the SEC's motion for summary judgment.

Dated:  July 14, 2023

Respectfully submitted,

<u>/s/ *Alexandra Verdi*   </u>
Alexandra Verdi (NY Reg. No. 5480934)
Office of the General Counsel
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549
Telephone: (202) 551-5057
Fax: (202) 772-9263
verdim@sec.gov

*Counsel for Defendant*
*U.S. Securities and Exchange Commission*